**BOWLES, Adm'r, Office of Price Administration, v. ORCURTO et al.**

No. 3828.

District Court, E. D. Pennsylvania.

Sept. 29, 1944.

Robert J. Callaghan, Dist. Enforcement Atty., William N. J. McGinniss, Chief Litigation Atty., and Sydney M. Friedman, Enforcement Atty., all of Philadelphia, Pa., for plaintiff.

Julius M. Rapoport, of Allentown, Pa., for defendants.

KALODNER, District Judge.

This is an action for an injunction brought by the Administrator of the Office of Price Administration pursuant to Section 205(a) of the Emergency Price Control Act of 1942, 56 Stat. 23, as amended, 50 U.S.C.A.Appendix § 901 et seq. The plaintiff seeks to enjoin acts and practices alleged to constitute a violation of Section 4(a) of that Act in that defendants have violated Sections 1499.11 and 1499.12 of General Maximum Price Regulation effective May 11, 1942, 7 F.R. 3153, 1 OPA Service 11:77.

The sole question for determination is whether defendants on or before July 1, 1942, and thereafter, and at the time of this action, did prepare and keep records in accordance with the requirements of the above Sections of the Regulation.

The case was tried before the Court without a jury, on the pleadings and additional testimony. Accordingly, I make the following:

Findings of Fact

1. Plaintiff is the Administrator of the Office of Price Administration.

2. Defendants are partners, trading as Silk Fabrics Company, engaged in the business of weaving various cloths for the accounts of others upon a commission basis, and maintain a place of business for that purpose at Washington and New Streets, Allentown, Pennsylvania. Such business is referred to in the textile industry as "commission weaving."

3. On May 11, 1942, the General Maximum Price Regulation, duly issued by the

Office of Price Administration pursuant to the provisions of the Emergency Price Control Act of 1942, became effective, establishing maximum prices, inter alia, for the performance of the service of commission weaving.

4. Section 1499.11 of the said Regulation required that persons engaged in the business of commission weaving prepare, on or before July 1, 1942, on the basis of all available information and records, a statement showing the highest prices which he charged for such services as he supplied during March 1942, his offering prices for the supply of such services during the said month, together with an appropriate description or identification of each such service, and all his customary allowances, discounts and other price differentials.

5. Section 1499.12 of the said Regulation provides that every person selling services for which maximum prices are established thereby shall keep records showing, as precisely as possible, the basis upon which he determined maximum prices for those services supplied by him after May 11, 1942, the effective date of the said Regulation.

6. Defendants have prepared, kept and maintained since July 1, 1942, a statement showing, as to each of their customers, each sale, the style number of the fabric, the yardage produced, the unit price per yard, and the total price; and a book referred to as a "construction book," showing the construction of each style.

7. Defendants have kept their customary records showing the basis upon which they determined maximum prices for their services.

### Discussion

The narrow question raised by the plaintiff in this case is whether the base period statements and current pricing records kept and maintained by defendants since July 1, 1942, are inadequate under Section 1499.11 of the General Maximum Price Regulation, in that the services sold or offered for sale, as recorded in the statement, are not fully described. Each service sold or offered for sale was designated therein only by a number. Each lot number, however, was described in detail in a "construction book" maintained by defendants. Plaintiff urges that the information contained in the "construction book" should have been made a part of the base period statement and current pricing records, so that it would be unnecessary to refer to another document or book.

Applicable to this issue is the case of Bowles v. Cohn, D.C.S.D.N.Y., 57 F.Supp. 306. There action was brought to enjoin defendant from selling or delivering handkerchiefs on the ground that the style numbers of defendant's handkerchiefs were not sufficient identification. It was pointed out that Section 1499.11(b) (1) requires that the base period statement show the "highest prices which he [the seller] charged for such of those commodities or services as he delivered or supplied during March 1942 and his offering prices for delivery or supply of such commodities or services during such month, *together with an appropriate description or identification of each such commodity or service.*" Judge Caffey then stated:

"Nevertheless, any person reading the portion of the regulation just quoted might reasonably believe that the style number of such an article was enough to identify it. The regulation speaks in the alternative. It calls for an appropriate description or an identification. Either would do. The style numbers having been furnished, I feel that it is not established that the defendant failed to identify his commodities."

On the record, the case at bar is even stronger than the Cohn case in that here the lot numbers employed by defendants referred to a "construction book" maintained by defendants, which gave a complete and detailed description of each service. The services which defendants perform are complicated; the description is of necessity technical and detailed. Had there been no "construction book" or had there been a construction book but no satisfactory reference system, the case would be stronger for plaintiff. However, here defendants had a base period statement and current records which identified each service; in addition a reference was made in these records to a single book clearly and completely describing the services.

It seems to me that the defendants here have satisfied the obligation imposed on them to supply documents which would furnish the Office of Price Administration investigators with all the necessary information for enforcement of the Emergency Price Control Act and yet with the minimum expenditure of time and labor by these investigators. If anything, it can only be said that defendants have technically violated the regulation, but I am of the

opinion that compliance here was so substantial that an injunction ought not to issue.

Accordingly, I state the following:

Conclusions of Law

1. Defendants have substantially complied with Section 1499.11 of the General Maximum Price Regulation.

2. Defendants have substantially complied with Section 1499.12 of the General Maximum Price Regulation.

The motion for the injunction is denied.